IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DIATHEGEN, LLC, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. A-12-CV-1146-LY |
| | § | |
| PHYTON BIOTECH, INC., PHYTON | § | |
| BIOTECH, LLC, AND PHYTON | § | |
| BIOTECH, GMBH, | § | |
| DEFENDANTS. | § | |

## OPINION AND FINAL JUDGMENT

Before the court in the above-styled and numbered cause of action are DiAthegen, LLC's Application to Confirm Arbitration Awards, filed December 17, 2012 (Clerk's Doc. No. 1), Respondents' Response in Opposition to Application to Confirm Arbitration Award and Petition to Vacate Arbitration Award, filed February 15, 2013 (Clerk's Doc. No. 4), Applicant's Reply in Support of Application to Confirm Arbitration Awards and Response to Petition to Vacate, filed March 1, 2013 (Clerk's Doc. No. 6), and Respondent's Reply in Further Support of Petition to Vacate Arbitration Award, filed March 22, 2013 (Clerk's Doc. No. 9). The court will confirm the arbitration awards for the reasons to follow.

### I. Background

The arbitration proceedings in this case arose out of an April 7, 2006 Exclusive Sub-License Agreement between DiAthegen, LLC (DiAthegen) and Phyton Biotech, Inc. (Phyton). The agreement gave Phyton the exclusive right to use and develop certain scientific knowledge and technology developed at Ohio University. In return, Phyton agreed to specific covenants, including an antishelving provision that was to prevent Phyton from keeping the technology under exclusive license while failing to take steps towards its development.

Although Phyton had the right to give up its exclusive rights at any time, the agreement required Phyton to use "commercially reasonable efforts" to develop the technology into a "commercially viable growth hormone receptor antagonist product." Phyton was further required to commit time "equal to at least three full time equivalents to the development of the Product" and to exercise commercially reasonable efforts towards filing a specified application with the Food and Drug Administration (FDA) by December 15, 2009. The agreement entitled DiAthegen to certain lump sum payments within 30 days of the achievement of specified milestones in the development of the product, as well as royalties following the commercialization of the product. In the event of a dispute or disagreement between the parties, the agreement provided for arbitration before the Judicial Arbitration and Mediation Service (JAMS).

    Phyton initially employed approximately 40 employees at a lab near Princeton, New Jersey, and spent $20 to $25 million on implementing the parties' agreement. However, in August 2007, the board of Phyton's parent company instructed Phyton to cease funding its efforts. Ultimately, Phyton missed the December 15, 2009 target filing date, and on January 14, 2010, DiAthegen sent Phyton formal notice that it considered Phyton to have breached the agreement. Eight months later, on September 23, 2010, DiAthegen sent a second formal notice of default. On December 10, 2010, DiAthegen sent Phyton formal notice of termination of the agreement. On January 31, 2011, Phyton wrote DiAthegen that it was terminating the contract on the basis that continued development and commercialization of the technology was no longer feasible.

DiAthegen filed a demand for arbitration before JAMS, alleging Phyton breached the parties' sublicense agreement by (1) failing to use commercially reasonable efforts to bring a commercially viable growth hormone receptor antagonist to market and (2) failing to cease using the subject technology and return all copies after DiAthegen terminated the contract. The demand also sought declarations that the sublicense agreement had been terminated and that Phyton had no further rights in or to the subject technology. DiAthegen requested damages for each of the alleged breaches, divided into four types: (1) "cost-of-cover" damages necessary to perform Phyton's unperformed efforts to develop the product in the amount of $13 million; (2) reduced patent royalty rights in excess of $30 million; (3) damages flowing from the diminution of value in the technology; and (4) reasonable attorney's fees and costs incurred in the arbitration. DiAthegen's prayer for relief requested these declarations and damages, prejudgment and postjudgment interest, and a return of the subject technology, as defined by the parties' contract.

JAMS appointed a tripartite panel of three arbitrators. The arbitration commenced on October 18, 2011. Following commencement of the arbitration, Phyton asserted counterclaims for breach of contract and fraud and moved for summary judgment, challenging DiAthegen's damages theories based on a limitation-of-liability provision in the sublicense agreement prohibiting the award of "consequential, incidental or special damages," including "lost profits."[1] The panel granted the motion in part, holding that lost royalties were

---

[1] The parties' sublicense agreement provides for the recovery of "all losses, costs, expenses, and damages incurred or suffered by" an injured party to the contract and prohibits the award of consequential, incidental, or special damages:
    IN NO EVENT WILL A PARTY BE LIABLE TO ANOTHER PARTY FOR
    ANY CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES,

3

consequential damages barred by the parties' sublicense agreement. The panel reserved for evidentiary determination the question of what amount of damages, if any, could be appropriate. The arbitration hearing on the remaining claims commenced on June 4, 2012.

On September 5, 2012, the panel issued a partial final award and retained jurisdiction for further proceedings related to prevailing party attorney's fees and costs. The panel's November 16, 2012 Final Award incorporated the full text of the partial final award and added additional findings, rulings, and awards relating to attorney's fees, costs, and interest. The panel held that Phyton breached the parties' agreement by failing to provide three continuous fulltime employees from November 2008 until contract termination and by failing to return the subject technology promptly after DiAthegen's January 2010 termination. The panel rejected all of Phyton's counterclaims, but found that DiAthegen was not entitled to receive Phyton's improvements to the technology. The panel also declared that Phyton had no further right, title to, or interest in, the technology and ordered the return of the original and all copies of the technology within 30 days of the order.

The final award also ordered Phyton to pay DiAthegen the following damages: (1) $1.875 million in contractual damages for failure to provide three continuous fulltime employees after October 2008; (2) $10,000 in contractual damages to replace the subject technology in the event Phyton was unable to return the original and all copies of the technology; (3) $405,583 for reasonable attorney's fees; (4) $270,452 for reasonable costs of arbitration; (5) $121,502 in prejudgment interest; and (6) postjudgment interest accruing at

---

INCLUDING LOST PROFITS OR REVENUES.
Sublicense Agreement, § 13.5 (capitalization in original).

the per diem rate of $154.11 for every day after September 30, 2012, that the award remains unpaid.

DiAthegen now moves the court to confirm the arbitration awards and render a final judgment against Phyton Biotech, Inc., Phyton Biotech, LLC, and Phyton Biotech, GmbH, jointly and severally. Phyton's response and petition to vacate challenges the $1.875 million in contractual damages awarded for Phyton's failure to employ three fulltime employees after October 2008 on the basis that the arbitrators exceeded their contractual authority in issuing this part of the award. Phyton also challenges DiAthegen's request that the three respondents in this action be held jointly and severally liable for the award. DiAthegen argues in response that the court should dismiss Phyton's petition to vacate on the basis that it is untimely.

## II. Legal Standard

In light of the strong federal policy favoring arbitration, judicial review of an arbitration award is "extraordinarily narrow" and "exceedingly deferential." *Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 637 (5th Cir. 2012); *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002). The Federal Arbitration Act provides the only grounds upon which a reviewing court may vacate an arbitration award. *Brook*, 294 F.3d at 672. The act allows a court to vacate an award where "the arbitrators exceeded their powers . . . ." *Id.* (quoting 9 U.S.C. § 10(a)(4)). Because "[a]rbitration is a matter of contract[,] . . . [w]here arbitrators act contrary to express contractual provisions, they have exceeded their powers." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012) (internal quotation and citation omitted). If the contract creates a plain limitation on the authority of an arbitrator, the court should vacate an award that ignores the limitation. *Id.*

However, the "[Supreme] Court has consistently made clear that a court may not decline to enforce an award simply because it disagrees with the arbitrator's legal reasoning." *Reed*, 681 F.3d at 637. Nor may this court set aside an award for "a mere mistake of fact or law." *Rain CII Carbon, LLC*, 674 F.3d at 471 (internal quotation and citation omitted). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

### III. Analysis

*A.   Timeliness of Phyton's Petition to Vacate Arbitral Award*

Phyton's petition argues the arbitrators exceeded their authority in awarding $1.875 in damages for Phyton's failure to continuously employ three fulltime employees during the life of the contract. DiAthegen asks the court to dismiss this challenge as untimely and confirm the awards.

The Federal Arbitration Act requires that a motion to vacate, modify, or correct an arbitral award "be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. It is DiAthegen's theory that because the September 5, 2012 Partial Final Award contained the arbitrators' findings as to all issues except for attorney's fees, costs, and interest, Phyton was required to file its challenge to the panel's contractual damages award within three months of the filing of the partial final award. Because Phyton waited to file its petition until after the panel issued its final award (and DiAthegen moved for confirmation), DiAthegen contends the petition is untimely.

In support of this argument, DiAthegen directs the court to the JAMS Streamlined Arbitration Rules and Procedures, which differentiate between interim awards and partial final or final awards, and caselaw allowing interlocutory review of arbitral orders resolving only part of a proceeding. *See, e.g., Providence Journal Co. v. Providence Newspaper Guild*, 271 F.3d 16, 18 (1st Cir. 2001) (district court had jurisdiction over petition to vacate arbitral award as to liability, despite fact that arbitrator had not yet ruled on damages); *Island Creek Coal Sales Co. v. Gainesville, Fla.*, 729 F.2d 1046, 1049 (6th Cir. 1984) (interim order that finally and definitively disposes of separate independent claim "may be confirmed" notwithstanding absence of award finally disposing of all claims submitted to arbitration), *abrogated on other grounds by Cortez Byrd Chips, Inc. v. Bill Halbert Constr. Co.*, 529 U.S. 193, 196 (2000). *See also* 9 U.S.C. § 16 (court may render order "confirming or denying confirmation of an award or partial award").

These authorities bear on the question of whether DiAthegen or Phyton could have moved to confirm or vacate the September 5, 2012 Partial Final Award before the arbitrators' issuance of a final award disposing of all claims submitted to arbitration, but they say nothing as to whether Phyton was required to do so. DiAthegen does not direct the court to any authority supporting the conclusion that Phyton is barred from challenging any aspect of the arbitrators' final award that was contained in the earlier partial award.

The arbitrators rendered a final award on November 16, 2012, containing all of their findings and conclusions, disposing of every claim presented in arbitration, and incorporating verbatim the previous partial final award. There is no basis for penalizing Phyton for its decision to wait until the completion of arbitration to file its petition. Accordingly, the court

holds Phyton's petition to vacate the November 16, 2012 Final Award is timely, and the court will consider the arguments therein in deciding whether to confirm or vacate the award.

B.  *Did the Arbitrators Exceed Their Authority?*

The arbitration provision in the parties' sublicense agreement provides:

> The arbitrators' authority to grant relief is subject to the terms of this Section, the terms of the Agreement, and the law governing the Agreement. The arbitrators shall have no power or authority to add to or detract from the agreements of the parties. The arbitrators shall have no authority to award exemplary, punitive, consequential, special, indirect, incidental, or treble damages.

Sublicense Agreement, § 13.8(c)(v). Phyton maintains the arbitrators violated this express contractual limitation on their authority by awarding Phyton $1.875 million in prohibited consequential, special, or indirect damages. Phyton argues this award cannot reflect DiAthegen's actual damages under Ohio law,[2] because DiAthegen never paid or lost $1.875 million and stood to gain, at most, $15,000 from the parties' contract during the period of Phyton's breach. Phyton argues the award leaves DiAthegen much better off than it would have been had Phyton performed, representing a tremendous windfall that cannot be categorized as direct damages under Ohio law.[3]

---

[2] The parties agree the law of Ohio governs the parties' sublicense agreement and the classification of damages in this case.

[3] In further support of its argument that the panel's damages award representing a windfall to DiAthegen, Phyton informs the court that the United States Patent Office rejected DiAthegen's patent claims on October 3, 2012, and November 13, 2012, after the record on the merits was closed at arbitration. Phyton contends even if a commercially viable drug product had been developed by Phyton, it would never have been patentable. The court does not find these facts, which were not before the arbitration panel, bear on the issue before the court—whether the arbitrators exceeded their authority in issuing the awards.

8

DiAthegen responds that Phyton's challenge is essentially a challenge to the arbitrators' interpretation of Ohio law on the classification of damages, which is not a basis for vacating or modifying an arbitral award. As to the merits of the parties' dispute, DiAthegen argues it was contractually entitled to measured progress toward commercialization of a product and it suffered actual damage as a result of Phyton's abandonment of development, but retention of exclusive rights, for a period of more than two years. According to DiAthegen, the panel's award of the amount DiAthegen would be required to pay in order to achieve the baseline minimum development that should have occurred during the period of breach compensates DiAthegen's expectation interest, which it argues is recoverable under Ohio law for breach of contract. Having considered the limitations in the parties' sublicense agreement, the arbitration awards, and governing law, the court agrees with DiAthegen that the arbitrators did not exceed their powers in rendering the challenged arbitral awards.

The record reflects that Phyton invoked section 13.5 of the parties' agreement in arguing for the limitation of DiAthegen's recoverable damages throughout the arbitration. The parties extensively briefed the issue of classification of damages under Ohio law to the arbitrators at summary judgment and in posthearing briefing. In the arbitrators' partial final and final awards, the arbitrators expressly recognized the contractual limitation on their powers to award damages, acknowledging "a key legal question regarding each type of alleged damages is whether it is consequential or indirect, and therefore barred by § 13.5." The arbitrators then went on to interpret and apply the limitation on liability in rejecting DiAthegen's request for $30 million in lost royalty income and $13 million in damages

associated with Phyton's failure to file an application with the FDA. The panel reasoned that these two measures of damages were consequential damages barred by the contract's limitation on liability, because they were not benefits of the bargain negotiated between Phyton and DiAthegen at the time the parties entered into the sublicense agreement. Rather, they reasoned, the contract provided an opportunity for royalty income in the event Phyton launched a product based on the subject technology, which depended on a number of contingencies and actions of other third parties. Similarly, the panel concluded that DiAthegen did not negotiate for the absolute right to, or guarantee of, a filing of an application with the FDA and that the guarantee of such a filing was "not within the contemplation of the parties at the time the [agreement] was signed."

In contrast, the panel found that DiAthegen had expressly negotiated for the provision of three fulltime employees by Phyton, a direct benefit of the bargain that protected against the shelving of the technology without further development for the life of the contract. Because Phyton breached the contract by failing to employ the equivalent of three fulltime employees for a period of 25 months, while still retaining exclusive rights to the technology during that time, the panel concluded that under Ohio law DiAthegen was entitled to receive direct damages for this breach. The panel found the preponderance of the evidence indicated that the annual cost of providing one fulltime employee was $300,000, for a total of $1.875 million in damages.[4]

---

[4] The panel also found DiAthegen was entitled to $10,000 in direct damages for Phyton's failure to return the subject technology, an award Phyton does not challenge.

The record reflects that the arbitrators considered the limitation on their power to award consequential or special damages and analyzed which measures of damages claimed by DiAthegen naturally resulted from Phyton's breach and represented losses contemplated at the time of the contract's making, guided by established principles of law. Although the parties may debate whether the arbitrators properly classified DiAthegen's various measures of damages, under governing Supreme Court and circuit precedent, this court may only vacate an arbitral award if the record demonstrates the arbitrators ignored the contractual limitation on damages in the parties' sublicense agreement or failed to draw the essence of the award from that agreement. *See United Paperworkers Int'l Union*, 484 U.S. at 38; *United Steelworkers of Am.*, 363 U.S. at 597. Phyton cannot credibly claim either.[5] A dispute over the proper application of governing law is not a valid basis for vacatur. *See Reed*, 681 F.3d at 637. Phyton has not proved that the arbitrators exceeded their powers in awarding

---

[5]Phyton directs the court to numerous cases in which federal courts vacated arbitral awards due to the arbitrators' exceeding their authority. However, all of these cases involved instances in which the arbitrators truly ignored some express limitation in the contract, which did not occur here. *See, e.g., Cont'l Airlines, Inc. v. Int'l Brotherhood of Teamsters*, 391 F.3d 613, 620 (5th Cir. 2004) (arbitrators exceeded their authority by finding verbal approval of use of cough medicine by doctor's staff satisfied condition in contract, which required doctor's prescription); *Smith v. Transport Workers Union of Am.*, 374 F.3d 372, 374–75 (5th Cir. 2004) (arbitrators exceeded their authority by modifying award more than month after issuance, where contract only permitted modification within three days); *HMC Mgmt. Corp. v. Carpenters Dist. Counsel of New Orleans & Vicinity, Local 1846*, 750 F.2d 1302, 1304 (5th Cir. 2004) (arbitrator exceeded his authority by granting relief for discharged employee, where arbitrator recognized there had been "adequate grounds" for discharge and contract allowed for termination with "just cause"); *Mo. River Servs., Inc. v. Omaha Tribe of Nebraska*, 267 F.3d 848, 855 (8th Cir. 2001) (arbitrator exceeded authority by allowing payment of award from proceeds of gaming operations in Ohio, where contract limited payment from property located in Thurston County, Nebraska); *Swift Indus., Inc. v. Botany Indus., Inc.*, 466 F.2d 1125, 1134 (3d Cir. 1972) (arbitrator exceeded his authority by awarding six-million-dollar cash bond for injuries not yet incurred despite contractual limitation to losses or expenses "incurred or suffered"). The court does not find these cases persuasive or controlling.

contractual damages in the amount of $1.875 million for Phyton's breach of the parties' sublicense agreement, and the court will confirm the arbitration awards.

C.     *Joint and Several Liability*

DiAthegen asks this court to render final judgment against Phyton Biotech, Inc., Phyton Biotech, LLC, and Phyton Biotech, GmbH jointly and severally. Phyton argues this would be an impermissible modification of the arbitral award. DiAthegen claims such a judgment would merely implement the award. The court agrees with DiAthegen.

DiAthegen filed a demand for arbitration against all three Phyton parties due to each of the parties' relationship to the sublicense agreement at issue. The record reflects that Phyton Biotech, Inc. was the contracting party to the agreement and that the agreement allowed for assignment. It is uncontested that Phyton Biotech, LLC is the successor through reorganization of Phyton Biotech, Inc., and Phyton Biotech, LLC assigned the agreement and responsibility under it to Phyton Biotech, GmbH at the end of 2007. The three Phyton parties filed a joint answer in response to DiAthegen's demand for arbitration, in which they referred to themselves collectively as "Phyton." The parties and the arbitration panel adopted this usage throughout the arbitration. The panel rendered partial final and final awards collectively against "Phyton." The awards do not differentiate between the three Phyton parties or apportion responsibility among them. DiAthegen claims the arbitral awards should result in a joint judgment against all three respondents, holding them jointly and severally liable.

In its opposition to DiAthegen's request, Phyton makes much of the fact that DiAthegen asked the arbitration panel to issue an award holding the respondents jointly and

severally liable, yet nowhere in the arbitral awards does the term "joint and several liability" appear. According to Phyton, this court's usage of the term joint and several, therefore, impermissibly modifies the award. To add a term not appearing on the face of the award would constitute a modification. The court finds the modification suggested here to be one of form, not substance, and permissible under the Federal Arbitration Act.

The Federal Arbitration Act allows a court to modify or correct an arbitration award "so as to effect the intent thereof and promote justice between the parties . . . where the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11(c). Under Ohio law, a joint judgment against multiple parties establishes as a matter of law their "joint liability." *Cox v. Adm'rs v. Hill*, 3 Ohio 411, 420 (1828). Moreover, where multiple parties file a joint answer and proceed to trial upon such answer, they waive their right to later complain of the joint judgment against them. *Township of Crane v. Secoy*, 132 N.E. 851, 852 (1921); *see also* 62 OHIO JUR. 3D *Judgments* § 42 (2013).

Despite the lack of specific joint-and-several language in the awards, the court can reach no conclusion other than that such was the intent of the arbitrators. The captions of the awards read:

> PHTYON BIOTECH, INC,
> PHYTON BIOTECH, LLC, and
> PHYTON BIOTECH, GmbH
> ("Phyton") Respondents

The arbitrators chose to group the Phyton entities together, refer to them collectively, and render the awards against all, without apportioning responsibility among them. The court concludes that such action results in joint-and-several liability and so modifies the awards.

## IV. CONCLUSION

Having considered the parties' filings, along with the applicable law in this cause, the court will grant DiAthegen's application to confirm the arbitrators' awards, deny Phyton's petition to vacate, and confirm the arbitrators' September 5, 2012 Partial Final Award and November 16, 2012 Final Award.

**IT IS THEREFORE ORDERED** that DiAthegen, LLC's Application to Confirm Arbitration Awards (Clerk's Doc. No. 1) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents' Petition to Vacate Arbitration Award (Clerk's Doc. No. 4) is **DENIED**.

**IT IS FURTHER ORDERED** that the September 5, 2012 Partial Final Award in JAMS No. 1310019686 is **CONFIRMED** as modified in all respects and incorporated herein as the Final Judgment of this court.

**IT IS FURTHER ORDERED** that the November 16, 2012 Final Award in JAMS No. 1310019686 is **CONFIRMED** as modified in all respects and incorporated herein as the Final Judgment of this court.

**IT IS FURTHER ORDERED** that DiAthegen, LLC recover its costs of court.

**IT IS FINALLY ORDERED** that this case is **CLOSED**.

SIGNED this _26th_ day of June, 2013.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE